**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
KAREN STROM,

                    Plaintiff,

       - against -

SIEGEL FENCHEL & PEDDY P.C.
PROFIT SHARING PLAN, et al.,
                    Defendants.
--------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

CV 03-1317 (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

      Plaintiff Karen Strom ("Strom") joined the lawyers of defendant Siegel, Fenchel &
Peddy, P.C. ("SFP") as a secretary to defendant Saul R. Fenchel ("Fenchel") at a predecessor
firm; she stayed with them as the firm changed its name, went to law school while continuing to
work in a support position, rejoined them as an attorney upon completing her studies, and
eventually became – at least as far as the public was told – their "partner."  After she resigned to
start her own practice, Strom and SFP disagreed about the benefits she was due:  Strom believed
she was a partner entitled to full benefits, and the defendants claimed otherwise on the ground
that Strom, despite being called a "partner," had never become a shareholder in the SFP
professional corporation.  Their dispute has produced extensive litigation, and is now before me
on the two sides' respective motions for summary judgment.  For the reasons explained below, I
now grant each motion in part and deny each in part.  Specifically, I find that Strom's claim
under Count I is foreclosed by an administrative decision that was neither arbitrary nor
capricious, that she may proceed to trial on Count II, the she has waived her claim under Count
III, that she is entitled to partial summary judgment on Count IV to the extent she seeks a
declaration of her right to benefits but not as to the imposition of civil penalties, and that she
may proceed only on a theory of fraud with respect to Count V.

I.      Background

1.      The Parties' Submissions

In addition to the Complaint, Docket Entry ("DE") 1 ("Cplt."), I have considered the following submissions in connection with the instant motions.

a.      Submissions On The Defendants' Motion

| DE | Description |
|----|-------------|
| 40 | [Defendants'] Notice of Motion for Summary Judgment |
| 41 | Memorandum of Law in Support of [Defendants'] Motion to [sic] Summary Judgment ("SFP Memo.") |
| 42 | Statement of Uncontested Material Facts on [Defendants'] Motion for Summary Judgment ("SFP 56.1 Stmt.") |
| 43 | Affidavit of Alex Chernoff [in Support of Defendants' Motion for Summary Judgment] |
| 44 | Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Strom Opp.") |
| 45 | Plaintiff's Rule 56.1 Statement in Opposition ("Strom 56.1 Response") |
| 47 | Reply Declaration of David A. Yackel in Further Support of Defendants' Motion for Summary Judgment |
| 48 | Reply Memorandum of Law in Support of Defendants [sic] Motion for Summary Judgment ("SFP Reply") |
| 53 | Plaintiff's Memorandum of Law [in Opposition to Defendants' Motion for Summary Judgment] ("Strom Opp.") |
| 55 | Declaration of Cynthia A. Groszkiewicz in Opposition to Defendants' Motion for Summary Judgment |
| 59 | Affidavit of Alex Chernoff in Support [of Defendants' Motion for Summary Judgment] |
| 63 | [Defendant's] Notice of Motion for Summary Judgment |

| DE | Description |
|---|---|
| 64 | Affirmation of Philip D. Nykamp [in Support of Defendants' Motion for Summary Judgment] ("Nykamp Aff.") |
| 65 | Nykamp Aff. Exhibits A through GG ("Nykamp Aff. Ex. __") |
| 66 | Nykamp Aff. Exhibits HH through OO ("Nykamp Aff. Ex. __") |

      b.      <u>Submissions On Strom's Motion</u>

| DE | Description |
|---|---|
| 46 | Declaration of Cynthia A. Groszkiewicz in Opposition [to Plaintiff's Motion] |
| 49-1 | Notice of [Plaintiff's] Motion for Summary Judgment |
| 49-2 | Plaintiff's Statement of Uncontested Material Facts Pursuant to Local Civil Rule 56.1 ("Strom 56.1 Stmt.") |
| 49-3 | Affidavit Declaration of Cynthia A. Groszkiewicz in Support of Plaintiff's Motion for Summary Judgment |
| 50 | Plaintiff's Memorandum of Law in Support of Her Motion for Summary Judgment ("Strom Memo.") |
| 51 | Declaration of Karen Strom in Support of Plaintiff's Motion for Summary Judgment ("Strom Dec.") |
| 52 | Declaration of Neil A. Capobianco in Support of Plaintiff's Motion for Summary Judgment ("Capobianco Dec.") |
| 54 | Plaintiff Karen Strom's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Strom 56.1 Response") |
| 56 | Plaintiff's Reply Memorandum of Law in Further Support of Her Motion for Summary Judgment ("Strom Reply") |
| 57 | Defendant's Response to [Plaintiff's] Rule 56.1 Statement of Facts ("SFP 56.1 Response") |
| 58 | Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("SFP Opp.") |
| 60 | Declaration of Saul R. Fenchel in Opposition to Plaintiff's Motion for Summary Judgment |

| DE | Description |
|----|-------------|
| 61 | Declaration of David A. Yackel in Opposition to Plaintiff's Motion for Summary Judgment |
| 67 | Declaration of Karen Strom in Support [of Plaintiff's Motion for Summary Judgment], Exhibits 1-21 ("Strom. Dec. Ex. __") |

### 2. Strom's Employment

The parties' submissions establish the following basic facts relevant to all claims, all of which are undisputed unless otherwise described. Facts relevant only to a specific issue are set forth in the relevant portion of the legal discussion that follows.

Strom was employed as Fenchel's secretary at SFP's predecessor firm from September 1980 through the end of 1984, at which time SFP came into existence as a professional corporation and Strom continued her employment there as either a secretary or paralegal assistant. In the Fall of 1985, Strom enrolled as a full-time law student at Hofstra University and continued to work for SFP during the school year on a part-time basis. The parties disagree over the number of hours Strom worked during the time she was a law student. *See* Strom 56.1 Stmt. ¶¶ 2, 4-16; SFP 56.1 Response ¶ 2, 4-16; SFP 56.1 Stmt. ¶¶ 1,3-4; Strom 56.1 Response ¶ 1,3-4.

When Strom finished law school and took the bar examination in 1988, SFP hired her as an attorney. SFP 56.1 Stmt. ¶ 5; Strom 56.1 Response ¶ 5. On January 1, 1995, SFP circulated a notice stating the firm was "pleased to announce that Karen Strom has become a member of the Firm[.]" Capobianco Dec. Ex. 7 (uppercase lettering altered). The firm also moved Strom's name "above the line" on its letterhead, and referred to her as a "partner" in communications with clients and others. SFP 56.1 Stmt. ¶ 14-15; Strom 56.1 Response ¶ 14-15. In short, in all the ways that a law firm typically signals the status of its attorneys to the world beyond its doors, Strom was a partner.

Within SFP's halls, however, as is increasingly true in many law firms, the implications of being a "partner" may not have been clearly defined, and indeed, the extent to which those implications were clear is at the heart of this lawsuit. The defendants contend that because SFP was a professional corporation, the term "partner" is meaningless and in particular did not affect Strom's status with respect to its several pension plans, each of which is a defendant in this lawsuit, namely, the SFP Profit Sharing Plan ("Profit Plan"), the SFP Defined Benefit Pension Plan ("Benefit Plan"), and the SFP Cash Balance Pension Plan ("Cash Plan"), as well as another plan administered separately for employees of Fenchel's own practice, the Saul R. Fenchel, P.A. Plan ("Fenchel Plan"). SFP 56.1 Stmt. ¶ 15; *see* SFP Memo. at 5.

Strom was never a shareholder in the SFP professional corporation; although her annual compensation increased throughout the period of her employment, she always received a salary. Beginning in 1997 (two years after the notice describing her as a "partner"), Strom's compensation was determined based upon a percentage of the firm's profits. Strom remained employed by SFP until January 2000, when she resigned to form a new firm with fellow SFP alumnus William Schroeder ("Schroeder"). SFP 56.1 Stmt. ¶¶ 16-17, 35; Strom 56.1 Response ¶¶ 16-17, 35.

    3.    <u>The First Lawsuit</u>

Long before the instant lawsuit was filed, Strom's departure from SFP occasioned litigation under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"). On August 7, 2000, Strom and Schroeder filed a complaint against SFP as well as Fenchel and two other SFP shareholders who are also defendants in this case, William D. Siegel ("Siegel") and Tracie P. Peddy ("Peddy"). In that litigation, Strom asserted rights under the Profit Plan and the Cash Plan and also sought various remedies under state law that are irrelevant

to the instant case.  *See* Nykamp Aff. Ex. C (*Karen Strom, et al. v. William D. Siegel, et al.*, CV 00-4594 (JM) (ETB) ("*Strom I*"), Memorandum of Decision and Order (E.D.N.Y. Dec. 7, 2000).

That first lawsuit did not result in a judgment on the merits.  On December 7, 2000, the Honorable Jacob Mishler, United States District Judge, issued an order dismissing the case for failure to exhaust administrative remedies.  *Id*.  Judge Mishler rejected Strom's argument that SFP had denied her effective access to the administrative remedies provided under the relevant plans, and therefore did not excuse her failure to exhaust those remedies; but he did give her a chance to cure that jurisdictional defect.  Specifically, Judge Mishler ordered that "Karen Strom is granted the opportunity to file requests for review of the claim stated in Count 1 [relating to the Profit Plan and the Cash Plan] on or before December 18, 2000" and he further granted her "leave to institute an action under ERISA after the administrative procedure has been finalized." *Id.* at 14.  A search of the record does not indicate whether Strom initiated any administrative procedure before the stated deadline nor did she seek or obtain an extension of it.

    4.    Administrative Proceedings In 2001 and 2002

By letter dated January 8, 2001, Strom submitted a claim for benefits under the Profit Plan.  *See* Strom Dec. Ex. 7.  On April 24, 2001, SFP denied the amount of benefits Strom requested and set a deadline of June 25, 2001, for Strom to request an administrative hearing to review the decision.  *Id*. Ex. 9.  Strom exercised that right and requested a hearing by letter dated June 24, 2001.  *Id*. Ex. 12.  At that hearing, which was conducted on January 22, 2002, the exclusive focus was on Strom's claim to benefits under the Profit Plan.  *See* Nykamp Aff. Ex. D. On March 12, 2002 SFP issued a "Decision After Hearing," memorializing the January 22, 2002 hearing, adjourning the hearing with regard to the Profit Plan pending the presentation of additional evidence, and denying (in response to Strom's written request rather than to

proceedings at the hearing) Strom's claim for benefits under the Cash Plan. *See id.* Ex. F at 10.

A second hearing on Strom's claims under the Profit Plan was conducted on May 14, 2002, again

dealing solely with Strom's Profit Plan claims, after which no decision was issued. *See id.* Ex. E.

5.     The Instant Lawsuit

Strom filed the pending Complaint on March 18, 2003.  In her new litigation, Strom

sought a declaration of her rights under each of the four relevant pension plans as well as an

award of additional benefits under each; she also added a separate claim asserting breach of

fiduciary duty by the plans' administrators. *See* Cplt. ¶¶ 40-75.  On August 25, 2004, the parties

consented to have the case referred to a magistrate judge for all purposes including the entry of

judgment pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.

DE 34.  The parties filed the instant motions on December 10, 2004.  DE 40 (Defendants' Notice

of Motion); DE 49-1 (Strom's Notice of Motion).  In a notation above the caption of her

memoranda, Strom requests oral arguments on both motions. *See* Strom Memo.  Having

reviewed the parties' voluminous filings, I see no need for further argument, *see* Mag. J. James

Orenstein R. III.C.4, and therefore proceed to discuss the merits of each motion.

II.     Discussion

A.     Applicable Law

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.

56(c)).  In determining whether to grant summary judgment, a court is confined to issue finding,

not issue resolution. *Rasmussen v. Sigma Corp. of America*, 27 F. Supp.2d 388, 391 (E.D.N.Y.

1998) (citations omitted). The court does not "'weigh the evidence and resolve factual issues'" but rather "'determine[s] as a threshold matter whether there are genuine unresolved issues of material fact to be tried.'" *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 408 (2d Cir. 1991) (quoting *Gibson v. American Broadcasting Cos.*, 892 F.2d 1128, 1132 (2d Cir. 1989)); *see* Fed. R. Civ. P. 56(c). A fact is material if it "'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue is presented if "'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'" *Id.* In assessing the evidence, "[a]ll factual inferences are to be resolved in favor of the non-movant." *Transco Prods., Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555 (Fed. Cir. 1994).

B.        The Defendants' Motion

The defendants assert that each of Strom's claims are time barred under the applicable statute of limitations. With respect to the first four counts asserting claims under the respective pension plans, they further argue that Strom has waived her right to challenge the administrators' determination of benefits, and that those determinations were within the proper scope of the administrators' discretion and that, absent proof of arbitrary or capricious decision-making, the determinations must be upheld. As to the fifth claim asserting breach of fiduciary duty, the defendants argue that Strom is not only time-barred, but also that she lacks standing. I address the arguments on each claim in turn.

1.        Count I – The Profit Plan

a.        The Statute Of Limitations

Strom's claim arises under 29 U.S.C. § 1132, for which "the controlling limitations period is that specified in the most nearly analogous state limitations statute." *Miles v. New York*

*State Teamsters Conference Pension and Ret. Fund Employee Pension Benefit Plan*, 698 F.2d

593, 598 (2d Cir. 1983) (citing *Bd. of Regents v. Tomanio*, 446 U.S. 478, 483-84 (1980)).

Because Strom's claims arose in New York, the latter rule implicates N.Y. C.P.L.R. § 213, which

prescribes a six-year limitations period. *See Miles*, 698 F.2d at 598 (citation omitted). As a

result, for Strom's claim to be timely, it must have accrued no later than March 18, 1997.

An ERISA claim such as Strom's "accrues upon a clear repudiation by the plan that is

known, or should be known, to the plaintiff – regardless of whether the plaintiff has filed a

formal application for benefits." Carey v. Int'l Broth. Of Elec. Workers Local 363 Pension Plan,

201 F.3d 44, 49 (2d. Cir. 1999); *see also Marotta v. Road Carrier Local 707 Welfare Fund*, 100

F.Supp. 2d 149,158 (E.D.N.Y. 2000) (quoting *Ambris v. Bank of New York*, 1998 WL 702289,

*6 (S.D.N.Y. Oct. 7, 1998) ("Once a plaintiff is on clear notice that [he or] she is not entitled to

benefits, the cause of action accrues.")). The notice of repudiation must be clear, but it need not

be made in a specific form. *Id.* (citing *Carey*, 201 F.3d at 49). Indeed, so long as the repudiation

is clear, an ERISA claim can accrue "'before a formal denial, and even before a claim for

benefits is filed.'" *Brennan v. Metropolitan Life Insurance Co.*, 275 F. Supp.2d 406, 410

(S.D.N.Y. 2003) (quoting *Union Pac. R.R. Co.. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998)

(citing *Miles,* 698 F.2d at 598)).

Strom bases her claim for additional benefits under the Profit Plan on the assertion that

she became entitled to them upon becoming a "partner" at SFP in 1995. Strom Memo. at 6.

Under the terms of the Profit Plan, as amended in 1995, the difference would be substantial:

contributions to the plan are 84% of all annual income over $120,000 for all participants, with

the exception of "salaried associates," as to whom the contribution is five percent.

The defendants claim that Strom's claim accrued no later than early 1996, when she received her Profit Plan account statement for calendar year 1995; despite the fact that Strom's status as "partner" had been announced at the start of the year, her account statement showed no substantial increase over the prior year and therefore, the defendants argue, should have put Strom on notice of the claim she now asserts. SFP Memo. at 8.

The facts underlying the defendants' argument in this regard are not in dispute: Strom acknowledges that she received a Profit Plan account statement every plan year starting with 1991, and agrees that in early 1996, Peddy gave her a copy of the Profit Plan for 1995 by hand. Nykamp Aff. Ex. HH ("Strom Tr.") at 40, 47; see also Nykamp Aff. Exs. H-Q, T, Y-EE (Profit Plan account statements). The copy of the 1995 Profit Plan included the amendment that excluded "salaried associates" from the increased contribution rate. Strom Tr. at 66; Nykamp Aff. Ex. R. Moreover, both Strom and Fenchel have testified that Strom complained about her failure to receive additional pension contributions upon making "partner" in early 1996. SFP Memo. at 9-10 (citing Strom Tr. at 41-42, 66; Capobianco Dec. Ex. Fenchel Depo. ("Fenchel Tr.") at 27-28, 30). Thus, when Strom received her account statement for 1995, Nykamp Aff., Ex. Q, she was put on notice that she was not receiving credit for the increased contributions that she now claims.

If the record went no further, I would agree with the defendants that Strom's claim under the Profit Plan accrued in 1996, SFP Memo. at 15 (citing *Ambris v. Bank of New York*, 1998 WL 702289 at *4), and that it is therefore time-barred. The record, however, does go further. After Strom received her account statement in 1996 for the 1995 plan year without the allegedly promised increased contribution, she claims she raised the issue with SFP "[b]etween the time [she] was originally told and the time that [Peddy] denied ever telling [her and she] was led to

10

believe that it was going to be made. . . . [she] was constantly given assurance." Nykamp Aff. Ex. HH at 59. Peddy claims that sometime in 1995 the SFP shareholders decided not to give Strom an increased contribution to her pension account and following this decision, "Strom approached [her] and was very, very upset about the fact that she was not going to be getting this additional contribution. She felt she was being excluded from this additional benefit and she wanted to be included obviously and I indicated to her this was a decision made by the rest of us to change the form of it but not to include her in the formula." Capobiano Dec. Ex. Peddy Depo. ("Peddy Tr.") at 28.

Strom argues that her conversations with Fenchel and Peddy in 1996 raise disputed issues of material fact that preclude summary judgment, because the conversations did not constitute a clear repudiation. Strom Opp. at 1-2. She further contends that a "'clear repudiation' does not occur until the plan provides relevant documentation, explains in writing why the claim has been denied under the terms of the plan, and either informs the participant of their right to appeal or in fact denies their appeal." *Id.* at 4 (citation ommitted). In Strom's view, she did not receive a clear repudiation until the decision following a hearing in 2002.

Strom's arguments are inapposite. Although there may be a dispute about who said what in 1996, that factual dispute is not material unless the conversations could reasonably have led Strom to believe that the account statements did not mean what they said or were subject to change. Even assuming that to be the case, Strom's receipt in 1996 of the plan statement for 1995 put Strom on notice that SFP might not honor what she believed to be an agreement to raise her benefits. *See* Nykamp Aff. Ex. HH at 66. Her receipt the following year of a Profit Plan statement for 1996 that still did not reflect the allegedly promised increase in contribution would constitute a clear repudiation of benefits. As discussed above, the repudiation of benefits that

11

triggers the accrual of an ERISA cause of action need not be recited in a particular kind of document – indeed, it need not even be in writing – and it need not inform the participant of her various rights.

Accordingly, proof in the record that Strom received the statement for 1996 prior to March 18, 1997, would be sufficient to warrant summary judgment on the ground that the claim in Count I is time-barred. The record, however, is silent as to precisely when in 1997 Strom received that statement, and the document itself sheds no light on the relevant factual inquiry. *See* Nykamp Aff. Ex. T. Given the conflicting accounts of the conversations following the issuance of the 1995 statement, I must therefore conclude that there remains a disputed issue of material fact as to whether the claim in Count I was timely filed.

b.      Waiver

In their Notice of Motion, DE 40, the defendants purport to seek summary judgment as to Count I on the ground that Strom waived the claim, but their substantive supporting papers do nothing to substantiate the assertion. I therefore do not rely on a waiver theory in granting summary judgment as to Count I.

c.      Review Of The Plan Administrators' Determination

The Supreme Court has held that "a denial of benefits challenged under § 1332(a)(1)(B) [of ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where a plan gives the administrators such discretionary authority, the administrators' decisions are entitled to deference, and a reviewing court "will not disturb the administrators' ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan v. NYNEX Pension Plan*, 52

F.3d 438, 441 (2d Cir. 1995) (citation omitted).   In applying the arbitrary and capricious

standard of review, a court "may overturn a decision to deny benefits only if it was without

reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 442

(quotation omitted).

The parties agree that the Profit Plan's administrators have discretion to construe the

plan's terms and to determine all questions relating to eligibility to receive benefits under the

plan.  SFP Memo. at 17; Strom Opp. at 11, *see* Nykamp Aff. Ex. L ("Profit Plan") at 19-20.   I

must therefore in general defer to the administrators' determinations; I am "not free to substitute

[my] own judgment for [theirs] as if [I] were considering the issue of eligibility anew." *Pagan*,

52 F.3d at 441 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 285

(1974)).  If required to "choose between two competing yet reasonable interpretations of a

pension, [I] must accept that offered by the administrators." *Id.* at 443 (citation omitted).

The plan administrators interpreted the terms "salaried associate" and "non-profit sharing

attorney," as used in both the Profit Plan and the Cash Plan, "to mean any employee at [SFP]

who did not own an equity interest in the Firm" and therefore to exlcude Strom, who plainly

never owned such an interest.  SFP Memo. at 18.   The defendants argue that I must uphold that

interpretation – and therefore the resulting denial of benefits – because (to use an unduly

perplexing double negative) it is not unsupported by substantial evidence. *Id.*  Strom disagrees,

and seeks to have me interpret the relevant terms *de novo*, because the administrators

"'interpreted' the plans under a flagrant and inherent conflict of interest, refused even to accept

Strom's participant status in 3 of the 4 plans until after Strom commenced the instant litigation,

offered varying and conflicting plan 'interpretations' designed solely to deprive Strom of her

rightful benefits, and did not apply the 'interpretation' it now urges to the other non-shareholder partners of SFP." Strom Opp. at 11. On this legal dispute, I must rule in the defendants' favor.

A conflict alone is insufficient to trigger *de novo* review of decisions by an administrator who is vested with discretion to construe ambiguous terms. Rather, when "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115 (quotation omitted). To overturn the administrators' interpretation of the plan, Strom must therefore not only cite a conflict, but must also explain how the conflict affected the challenged interpretation. *See Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1255 (2d Cir. 1996) (discussing *Pagan*).

I must thus apply a two-part test and inquire "[f]irst, whether the determination made by the administrator is reasonable, in light of possible competing interpretations of the plan; second whether the evidence shows that the administrator was in fact influenced by [the cited] conflict." *Id*. at 1255-56. The burden under this test is Strom's. *Id.* (citations omitted). If she can carry that burden, I can review the challenged interpretation *de novo*; if not, then the conflict of which she complains is but one factor I can consider in determining whether the interpretation was arbitrary and capricious.

In her pursuit of a more favorable legal standard, Strom relies on the wrong line of authority. She writes that "the Second Circuit has held that a conflict of interest exists where the plan administrator is comprised of employees of the plan sponsor with a direct financial interest in the outcome of the benefits denial determination." Strom Opp. at 11-12 (citing DeFelice v. American Int'l Life Ass. Co., 112 F.3d 61, 65-66 (2d Cir. 1997)). Strom concludes by stating that in *DeFelice* "the Second Circuit has held that *de novo* review is appropriate where the plan

administrator operates under such a blatant conflict of interest, requiring the district court to properly interpret the plan." *Id.* at 11.

Strom's reliance on *DeFelice* is misplaced. The plan at issue in *DeFelice*, unlike the Profit Plan and the Cash Plan in this case, did not give its administrators the discretion to interpret ambiguous terms in the plan language. Strom quotes a passage from *DeFelice* that assumes *de novo* review and addresses whether, in conducting such review, a court may consider evidence outside of the administrative record or must instead confine itself to the same proof as the administrator whose decision is being considered. *DeFelice,* 112 F.3d at 66. The court explicitly noted, as Strom does not, that its holding therefore only applied to cases where *de novo* review was available. *Id.* at 66 ("The line of cases interpreting this more deferential standard recently produced *Whitney v. Empire Blue Cross and Blue Shield*, 106 F.3d 475 (2d Cir. 1997), which held that *Sullivan* requires a district court to give even a conflicted insurer the same deference as an independent fiduciary."). In short, Strom does not resolve the question of the appropriate standard of review with her reliance on *DeFelice*; rather, she begs it.

As a result, Strom's vigorous attempts to demonstrate the existence of a conflict in interest are of no moment. She argues that SFP's status as both the plans administrator and sponsor created "a flagrant and inherent conflict of interest between SFP's desire to maximize its own economic performance" and its obligation to make decisions for the sole benefit of plan participants. Strom Opp. at 16. She further alleges that her resignation from SFP to start her own firm, and the subsequent competition for clients, produced significant animosity between herself and SFP shareholders Siegel, Fenchel, and Peddy. Strom Opp. at 12.

For purposes of this discussion, I will assume that the latter statement is correct. But that assumption does not carry the day, and Strom's conclusory statement that "[i]nevitably, the

15

extreme conflict of interest has materially influenced how SFP has sought to interpret the relevant language from the plans," *id.*, has no evidentiary basis. Strom's attempt to show an actual effect on the benefits decision rests on nothing more than examples of the administrators' disagreement with her own interpretations of the pension plan's language or, with respect to an excerpt from the May 14, 2002 hearing cited as evidence of bias, clearly taken out of context. *See* Strom Opp. at 14; Nykamp Aff. Ex. E at 27-30 (discussing differences between Strom's and SFP's interpretation of "add-ons").

Strom has not carried her burden in showing that *de novo* review is warranted, nor has she raised any dispute of material fact that would necessarily postpone a determination of the proper standard of review until trial. The decision to deny her the benefits she seeks under the Profit Plan must therefore be upheld unless it was arbitrary and capricious. Under the latter standard of review, I must defer to the administrators' decision to interpret the terms "salaried associate" and "non-profit sharing attorney" to mean attorneys who were neither shareholders nor officers of SFP because that interpretation was not "without reason, unsupported by substantial evidence or erroneous as a matter of law." Accordingly, I grant the defendants summary judgment on the Complaint's first count.

### 2. Count II – The Benefit Plan

In their Notice of Motion, the defendants claim that Strom's "first four ERISA claims" are time-barred or otherwise waived. DE 40. Their substantive supporting papers, however, do not specifically address Strom's second cause of action under the Benefit Plan. *See generally* SFP Memo. In particular, the defendants' arguments as to why Strom received a clear repudiation of benefits sufficient to trigger the limitations period in 1996 are applicable only to Strom's claims for under the Profit Plan and the Cash Plan. They have not shown as a matter of

law that Strom received a clear repudiation of her asserted rights to increased benefits under the Benefit Plan before March 18, 1997, nor, as noted above, have they substantiated their assertion of waiver. I therefore deny the defendants' motion for summary judgment on Count II.

   3.   Count III – The Cash Plan

As with Strom's claim under the Profit Plan, the defendants seek summary judgment with respect to the Cash Plan on three distinct grounds: they claim that the claim is untimely, that Strom waived it, and that the administrators' denial was in any event a proper exercise of their discretion. They further argue that in the event I decide Strom is entitled to benefits under the Cash Plan, I should cap her claim. As explained below, I disagree with the defendants as to the timeliness argument, but agree with them as to waiver; I therefore find that they are entitled to summary judgment on the Cash Plan claim and need not review the substance of the administrators' decision or address the issue of a cap on available benefits.

   a.   The Statute Of Limitations

The same statute of limitations, and the same interpretive principles discussed above with respect to the Profit Plan claim apply to the defendants' assertion that the Cash Plan claim is time-barred. But there are important factual differences between the two claims warranting a different analysis. In particular, Strom received a Profit Plan statement in 1996 that showed a lower rate of contributions than she now believes was appropriate – but she received no statement at all with respect to the Cash Plan. The defendants do not explain in their memoranda how the absence of a statement could have served as the clear repudiation sufficient to put Strom on notice of her current claim, but Fenchel's deposition testimony provides a clue as to their theory. In essence, the defendants appear to take the position that by failing to provide Strom with a statement showing that she *had* accrued benefits under the Cash Plan, she received a clear

indication that, in the plan administrators' view, she *had not* accrued them. When asked whether anyone had conveyed to Strom in writing while she was employed at SFP that she was not entitled to Cash Plan Benefits, Fenchel answered that he "guess[ed] you could call it the absence of writing." He added that Strom "did not receive at the end of every year a statement that she had any money which indicates to a capable lawyer such as Ms. Strom that she was not in the plan." Fenchel Tr. at 40.

If that is the defendants' theory, it is insufficient (and if it is not their theory, they appear to have none that could suffice). The critical difference between this claim and the Profit Plan claim is that with respect to the latter, the undisputed facts showed that Strom had information available to her that would allow her to appreciate the significance of the account statement she received. To make a comparable argument with respect to the Cash Plan, the defendants would have to show, as a matter of undisputed fact, that Strom had sufficient information to appreciate that the absence of a Cash Plan account statement necessarily meant that she was not getting something she had reason to expect she would get if her understanding of the consequences of her status as a "partner" were correct.

The defendants can make no such showing. To be sure, Fenchel claims that Strom received a copy of all relevant documents for the Cash Plan at the time of its creation. Fenchel Tr. at 36. The defendants also assert that Fenchel and Peddy told Strom in 1996 that she would not receive contributions under the Cash Plan. Fenchel Tr. at 26-32; 38-39; Peddy Tr. at 70-72. There is, however, no dispositive documentary proof that Strom was given the plan documents. Further, while Strom agrees that she discussed her failure to receive some promised benefits with the Fenchel and Peddy, she recalls that these conversations ended with SFP promising to increase its contribution to her account. Strom Tr. at 42. More to the point, Strom claims that

her conversations did not specifically refer to the Cash Plan – indeed, she says she did not learn of that plan's existence until after she resigned from SFP.  Strom Dec. ¶ 25.  Whether Strom knew of the Cash Plan at the relevant times, and thus whether her cause of action under Count III accrued before March 17, 1997, is therefore a disputed question of  material fact that precludes a grant of summary judgment on the ground that the claim is time-barred.  I therefore turn to the issue of waiver.

b.    <u>Waiver</u>

The defendants argue that Strom waived the cause of action she asserts in Count III because she did not timely seek a hearing to review the denial of benefits to her under the Cash Plan.  Specifically, they contend that the denial occurred no later than August 2, 2000, when Strom received a letter from Tracie Peddy stating "[a]s you know, you are not a participant in the Cash Balance Plan as you were neither a shareholder nor an officer of Siegel Fenchel & Peddy, P.C."  Strom Dec. Ex. 5.  They add that Strom waived her claim because, following that denial, she failed to seek review either before the plan's 60-day deadline[1] or even before the later deadline of December 18, 2000 deadline specified in Judge Mishler's order dismissing Strom's first ERISA action.  *See id.*

---

[1]  The procedure for requesting such review under the Cash Plan is as follows:

> Any Employee, former Employee, or Beneficiary of either, who has been denied a benefit by a decision of the Administrator pursuant to Section 2.12 shall be entitled to request the Administrator to give further consideration to his claim by filing with the Administrator (on a form which may be obtained from the Administrator)  a request for a hearing.  Such request, together with a written statement of the reasons why the claimant believes his claim should be allowed, shall be filed with the Administrator no later than 60 days after receipt of the written notification provided for in Section 2.12.

Capobianco Dec. Ex. 21 at 25 (Cash Plan § 2.13).  The Profit Plan sets forth the same procedure under the same section number.  *Id*. Ex. 1 at 21 (Profit Plan § 2.13).

Strom's entire response to defendants argument is contained in a footnote in her opposition brief:

> While Strom attempted to appeal in 2001 and 2002 under both the [Profit Plan] and the [Cash Plan], Defendants absolutely refused to provide necessary [Cash Plan] documents ([Capobianco Dec.] ¶ 10). Defendants also refused to provide certain requested [Profit Plan] documents ([Strom Dec.] Ex. 21; [Capobianco Dec.] ¶ 19) and did not grant or deny Strom's [Profit Plan] appeal. While Defendants initially moved to dismiss Strom's claims for failure to exhaust administrative remedies, that motion has been withdrawn.

Strom Opp. at 6-7 n.2. It thus appears that Strom concedes that she did not request an administrative hearing before the deadlines that the defendants cite, and that implicit concession is consistent with the record. *See* Strom Dec. ¶ 36 (requesting benefits under the Cash Plan by letter dated January 17, 2001 after Judge Mishler's December 18, 2000 deadline); *Id.* Ex. 8.

Although I am loath to put more effort into analyzing the defendants' waiver argument than Strom has done in the preceding remarkably inadequate response, I cannot in good conscience (or with due regard for the needs of any reviewing court) grant the defendants' motion simply because Strom's brief is so perfunctory; I must instead assess whether the defendants' request for relief is supported by the record and consistent with applicable law. I find that it is.

In a sense, Peddy's letter of August 2, 2000 is a red herring. If it did trigger the 60-day deadline for seeking review, Strom did waive her opportunity–but Judge Mishler's order granting Strom "the opportunity to file requests for review ... before December 18, 2000" and to "institute an action under ERISA after the administrative procedure has been finalized" (*Strom I*, DE 28 at 14) gave her a new opportunity that she otherwise would not have had. I need not (and should not) question whether Judge Mishler was right to give Strom that opportunity because she did not in any event take advantage of it.

On the other hand, if Peddy's letter did not trigger the 60-day deadline, then Judge Mishler's order *might* be deemed to have created an artificial deadline on Strom that the Cash Plan itself did not impose. However, for reasons I will explain, I need not decide that thorny issue because the defendants have themselves waived their right to insist on adherence to Judge Mishler's deadline.

In her letter of January 17, 2001, Strom stated her "understanding that [she] should have been covered by [the Cash Plan]" and asked the administrators to "please consider this letter a claim for benefits." Strom Dec. Ex. 8. Had the defendants wished to stand on whatever rights they had as a result of Judge Mishler's order, they could have told Strom that she had made her request too late. But they did not do so; instead, on April 23, 2001, Siegel, Fenchel, and Peddy responded with a letter addressing the substance of Strom's request with respect to both the Profit Plan and the Cash Plan. The letter responded to Strom's request under the Profit Plan "as a claim pursuant to Section 2.12 (Claim Procedure) of the Plan." Strom Dec. Ex. 9. It recited a year-by-year statement of Strom's benefits under the Profit Plan, noted that Strom had the right to request an appeal of the denial of additional benefits, and specified a deadline of June 25, 2001 (60 days from the date of the letter) for seeking such review. With respect to the Cash Plan, the letter explicitly referred to Strom's letter of January 17, 2001 and responded by reiterating the denial of benefits that Peddy had issued on August 2, 2000, on the ground that Strom was neither a shareholder nor an officer of SFP and therefore was not a participant in the Cash Plan. *Id*.

The deadline in Judge Mishler's order is thus not dispositive: months after that deadline passed, Strom received a letter denying her request for benefits under both the Profit Plan and the Cash Plan. As a result, she had an opportunity to seek administrative review of each denial

within 60 days of that letter, or no later than June 25, 2001. She did so with respect to the Profit Plan, but, as the following discussion shows, she did not do so with respect to the Cash Plan.

Two days' after the letter of April 23, 2001, Strom's representative sent a letter in response stating, in relevant part, that "Karen Strom should be, and is, a participant under the [Cash Plan]" and requesting further documentation and financial statements. Strom Dec. Ex. 10. Fenchel responded on June 12, 2001, with a letter saying that "[t]here is no provision of the [Cash Plan] which qualifies Ms. Strom to receive a benefit under the Plan; had a statements [sic] been issued, it would have stated that her benefit was $-0-." Strom Dec. Ex. 11. The letter said nothing about the Profit Plan. Strom's representative fired back three days later with a letter that formally requested "a hearing on the denial of [her] claim for benefits from the *Profit* Sharing Plan," but said nothing about a hearing on her claim under the Cash Plan. Strom Dec. Ex. 12 (emphasis added).

A hearing was held on January 22, 2002 during which the Profit Plan, and not the Cash Plan was discussed. Strom Dec. Ex. 13. Two days after that hearing – that is, over seven months after being told for the third time that she was not entitled to benefits under the Cash Plan – Strom finally requested a hearing regarding the Cash Plan. Strom Dec. Ex. 15.

Nothing happened at the hearing on January 22, 2002, of any relevance to Strom's claim under the Cash Plan. Her time to request a hearing on that claim thus began to run no later than June 12, 2001, the date of the letter telling her that she was entitled to no Cash Plan benefits. By waiting more than 60 days after that date, Strom waived the claim she now asserts under Count III. The Cash Plan administrators properly recognized that waiver in a written decision issued on March 12, 2002 following the January hearing: "No request for a hearing having been made either under the Plan period or the period set by [Judge Mishler], Ms. Strom has intentionally

waived her administrative remedy to review the denial under the Cash Balance Plan."  Strom

Dec. Ex. 16.

In an argument that is somewhat inconsistent with her reliance on the January 24, 2002

request for a hearing (the request that I find to have been untimely), Strom further takes the

position that, in essence, she has *never* received a notification that properly triggers her 60-day

opportunity to request hearing on her Cash Plan claim.  Specifically, she asserts that the written

denial of her claim for Cash Plan benefits set forth in the letter of June 12, 2001, was not

sufficient under section 2.12 of the plan.  That section provides, in relevant part:

> In the event the claim is denied, the reasons for the denial shall be specifically set
> forth in the notice in language calculated to be understood by the claimant,
> pertinent provisions of the Plan shall be cited, and, where appropriate, an
> explanation as to how the claimant can perfect the claim will be provided.  In
> addition, the claimant shall be furnished with an explanation of the Plan's claims
> review procedure.

Capobianco Dec. Ex. 21 at 25; *see also Id*. Ex. 1 at 21 (identical provision with same number

under the Profit Plan).

Contrary to Strom's claim that the letter of June 12, 2001, was insufficient, the notice in

fact contained all of the required information, including the deadline for appeal, though it

pertains to the profit sharing plan.  Strom Dec. Ex. 15.  However, the paragraph immediately

following contains the denial of Cash Plan benefits and it is difficult to believe this technicality

prevented Strom from requesting a hearing to review the administrators' denial.  At this late date,

Strom can not now claim that her failure to request a hearing regarding defendants clear denial

of her Cash Plan claim was the result of inadequate notice pursuant to section 2.12.  Indeed, if

the June 12, 2001, letter was insufficient, and if something more was needed to make Strom

actually realize that the time had finally come to request a hearing on her Cash Plan claim, then

the timing of Strom's request for such a hearing on January 24, 2002 – when no notice that Strom would allow as sufficient had yet been provided – is wholly inexplicable.

Strom did not timely request a hearing of the denial of her benefits under the Cash Plan. She therefore waived her claim to seek review of that denial in this court. *See Chapman v. Choicecare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2001) (noting that filing an untimely request to review the denial of benefits constitutes failure to exhaust administrative remedies); *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (recognizing "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases") (internal quotation omitted).

c.      Other Arguments

The foregoing analysis explains why I find that Strom has waived her claim under Count III.  As a result of that finding, I need not and do not address the defendants' alternative argument that the administrators' denial of benefits under the Cash Plan should be sustained under the arbitrary-and-capricious standard of review.  For the same reason, I need not and do not address the defendants' argument seeking to place a cap on the amount of benefits that Strom might recover should she be allowed to proceed with Count III.

4.      Count IV – The Fenchel Plan

To the extent the defendants seek summary judgment with respect the to claim under the Fenchel plan, their motion suffers from the same defect discussed above with respect to the Benefit Plan claim under Count II:  they fail to address it specifically in their papers and make arguments applicable only to Strom's claims for increased benefits under the Profit and Cash Plans.  Having failed to show as a matter of law either that Strom received a clear repudiation of rights to increased benefits in the Fenchel Plan sufficient to start the limitations period purposes

or that waived her right to challenge the administrators' decisions by failing to request a review of the denial, the defendants are not entitled to summary judgment on Count IV.

     5.    Count V – Fiduciary Duty

     a.    Standing

The individual and law firm defendants assert that Strom lacks standing to seek personal recovery on a claim that they breached their fiduciary duty as plan administrators by failing to keep promises they allegedly made to Strom. SFP Memo. at 23. In particular, they argue that ERISA permits recovery only on behalf of a pension plan as a whole. They cite as support for the proposition decisions by other courts. *See id*. (citing *Copeland v. Geddes Federal Savings & Loan Association Retirement Income Plan*, 62 F. Supp.2d 673 (N.D.N.Y. 1999); *Klecher v. Metropolitan Life Insurance Company*, 2003 WL 21314033 (S.D.N.Y. 2003); *Kulesza v. New York University Medial Center*, 129 F. Supp.2d 267 (S.D.N.Y. 2001)). As explained below, I disagree.

The relevant provision of ERISA reads as follows:

(a) A civil action may be brought-

    (1) by a participant or beneficiary-

        (A) for the relief provided for in subsection (c) of this section, or

        (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

    (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....

29 U.S.C. § 1132(a). Strom's fifth count explicitly relies on subsection (a)(3).

Given the language of the relevant provision, the defendants' reliance on the cases they cite is misplaced. *Kulesza* and *Klecher* are most obviously inapposite, as they interpret only subsections (a)(1) and (a)(2) of the ERISA standing provision, respectively, rather than subsection (a)(3) on which Strom grounds her claim. The defendants fare no better under *Copeland*: the case does not stand for the proposition that recovery on the basis of a plan administrators' breach of fiduciary duty can only be for the "plan itself" but instead establishes the more modest rule that recovery under § 1132(a)(3) may not be appropriate if it duplicates relief sought under another ERISA provision. 62 F. Supp.2d at 679.

Moreover, the defendants cannot overcome the authority of the Supreme Court's decision in *Varity Corporation v. Howe*, 516 U.S. 489, 509 (1996), which squarely addressed the question whether a claim based on a breach of fiduciary duty against plan administrators may be brought on behalf of an individual. The Court flatly stated that "Congress ... provide[d] remedies for individual beneficiaries harmed by breaches of fiduciary duty." *Id*. at 507. *Varity* distinguished claims based upon subsection (a)(3) from those based on (a)(2); the former permits remedies for individuals but the latter does not. *See id*. at 509 (citing *Massachusetts Mutual Life Insurance. Co. v. Russell*, 473 U.S. 134, 139 (1985); *see also McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 320 F.3d 151, 161 (2d Cir. 2003) (allowing individual recovery for claims based on § 1132(a)(3)); *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001) ("*Varity Corp.* did not eliminate a private cause of action for breach of fiduciary duty

26

when another potential remedy is available; instead, the district court's remedy is limited to such equitable relief as is considered appropriate"); *Ream v. Frey*, 107 F.3d 147, 152 (3d Cir. 1997) (holding that individual recovery under § 1132(a)(3) is permissible).

Given this case law, I cannot agree with the defendants that Strom lacks standing under ERISA to pursue her fifth cause of action. Although that case law may establish certain limitations on the types of relief she can obtain if successful, it does not foreclose all recovery simply because Strom is acting on behalf of herself alone.

> b.    The Statute Of Limitations

Strom's claim based on the administrators' alleged breach of fiduciary duty is subject to the limitations period set forth in 29 U.S.C. § 1113, which provides as follows:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of:
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> >
> > (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Strom's fifth cause of action for breach of fiduciary duty concerns the promises allegedly made to her by Fenchel and Peddy in their capacity as plan fiduciaries, to the effect that she would receive an increase in her pension contributions upon becoming a "profit sharing partner" in early 1997. Cplt. ¶¶ 69, 72. Strom alleges that SFP had no intention of honoring this promise. *Id.* ¶ 73. However, Strom acknowledges that Peddy disavowed that alleged promise in December 1999. *See* Strom Opp. at 9 (citing Strom Tr. at 58). As a result, Strom's fifth cause of

action accrued no later than December 1999, and became time-barred three years later pursuant to § 1113(2) unless she can properly invoke the six-year limitations period available "in the case of fraud or concealment."

Strom claims the benefit of that longer period on that ground that the defendants engaged in fraud by promising her an increase in her pension contributions without intending to provide them; under that reasoning, she "discovered" the alleged fraud when Peddy disavowed the promise in 1999, and her complaint filed in 2003 was therefore timely.  Strom's theory is sufficient to survive the defendants' motion for summary judgment.  First, her complaint adequately alleges the common law elements of fraud, namely, (1) a material false representation or omission of an existing fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, (4) upon which Strom reasonably relied, and (5) resulting in damages.  *See MacDraw, Inc. v. CIT Group Equipment Financing,* 157 F.3d 956, 960 (2d Cir. 1998).  Second, several of those elements raise disputed issues of material fact that I cannot resolve on a motion for summary judgment.  Thus, to the extent that Strom's claim for breach of fiduciary duty seeks recovery on any theory other than fraud, it is time-barred, but to the extent Strom does assert a fraud theory, she may proceed.  On that basis only, I deny the defendants' motion for summary judgment on Count V.

C.    Strom's Motion

In her cross-motion for summary judgment on Counts I through IV, Strom seeks an order clarifying her rights to future pension benefits under the Profit Plan, the Cash Plan, the Benefit Plan, and the Fenchel Plan, respectively.  She also seeks an order a pursuant to 29 U.S.C. § 1132(c)(1)(B) awarding her civil penalties of $110 per day for each document the defendants

allegedly withheld in violation of their lawful obligations.  DE 49-1.  I address each count in turn.

### 1. Count I – The Profit Plan

Strom claims she is entitled to an account balance under the Profit Plan of $269,964.55, a sum that includes contributions to which she claims she is entitled for the years 1985-1988. Strom Memo. at 3-7.  To have been eligible for such benefits under the plan, Strom would have had to have worked over a thousand hours during each of the relevant years.  *Id*. at 5.  Whether she worked the requisite hours during those years is a disputed question of material fact.  *See* Strom 56.1 Stmt. ¶ 3-18; SFP 56.1 Response ¶ 3-18.  Strom's motion is therefore denied as to Count I.

### 2. Count II – The Benefit Plan

Strom claims she worked over a thousand hours per year during the relevant period (1985 through 1991) and therefore was a participant entitled to benefits under the Benefit Plan.  Strom Memo. at 7-9.  Here again, whether Strom worked the requisite number of hours is a disputed question of material fact.  *See* Strom 56.1 Stmt. ¶ 3-18; SFP 56.1 Response ¶ 3-18.  I therefore deny Strom's motion as to Count II.

### 3. Count III – The Cash Plan

Strom argues that she was entitled to an increased contribution to her Cash Plan account because, in her view, she was "a partner–not a 'salaried associate'" in 1995.  Strom Memo. at 10. Strom certainly cannot prevail on that issue on summary judgment, as there is at a minimum a factual dispute as to whether her status was sufficient to qualify her for participation in the Cash Plan; if any party is entitled to a judgment as a matter of law on the question, it is not Strom.  I need not determine the latter issue, however, as I have found that Strom has waived her claim

under the Cash Plan.  Thus, both because Strom cannot meet the standard for summary judgment in her favor and because the claim is waived, I deny Strom's motion as to Count III.

4.    Count IV – The Fenchel Plan

The parties agree that Strom is entitled to an account balance of $10,326.16 under the Fenchel Plan.  Strom Memo. at 18; SFP Opp. at 7.  I therefore grant Strom's motion for summary judgment in that regard and order the Clerk to enter an order declaring Strom to be entitled to an account balance of $10,326.16 under the Fenchel Plan.

5.    Counts I Through IV – Civil Penalties For Withholding Documents

Strom seeks a penalty of $110 per day for each document the defendants allegedly withheld beyond the thirty days in which plan administrators are required to produce such documents pursuant to 29 U.S.C. § 1132(c)(1)(B).  Strom Memo. at 10; *see also* 29 C.F.R. § 2575.502c-1 (increasing the maximum penalty for improperly withholding documents from $100 to $110 a day for violations occurring after July 29, 1997).  As explained below, she is not entitled to such relief on her motion for summary judgment.

ERISA requires, upon written request by a beneficiary or a plan participant, that plan administrators "furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  The determination whether a penalty is warranted as a sanction for failure to supply such documents is committed to the district court's discretion.  29 U.S.C. § 1132(c)(1)(B); *see also Devlin*, 274 F.3d at 90; *W. Chambers v. European American Bank and Trust*, 601 F. Supp. 630, 638 (E.D.N.Y. 1985) (noting that even a clear violation of the statute does not compel a court to "mechanically issue a sanction").  In determining whether to impose such a sanction, I consider a

variety of factors including "bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary." *Devlin*, 274 F.3d at 90 (citing *Pagovich v. Moskowitz*, 865 F. Supp. 130, 137 (S.D.N.Y. 1994)).

The latter consideration is particularly relevant here, as Strom has failed to demonstrate prejudice from the claimed delay in receiving plan documents. Strom contends that she was harmed simply because the lack of documents rendered her unable to determine what her future benefits would be and thereby "ultimately forced [her] to commence this lawsuit to obtain the documents." Strom Memo. at 22. The history of the parties' litigation, in both this lawsuit and *Strom I*, suggests that there may well have been other considerations that were equally or more important to Strom's decision to file suit, but I do not rest my determination on that possibility alone. In addition, there is evidence that Strom had at least some copies of relevant plan documents about which she complains; for example, a letter from Strom's counsel states that she was using a copy of the Cash Plan received by her law partner Schroeder. *See* Strom Dec. Ex. 10.

The law is not settled as to whether such prejudice must be shown before I can order the requested penalty, or instead is merely one factor that is sufficient but not in itself necessary. *Compare W. Chambers*, 601 F. Supp. at 638 ("the weight of authority indicates that penalties are not imposed when a plaintiff has failed to demonstrate that his rights were harmed or otherwise prejudiced by the delay in his receipt of the information") *with Pagovich*, 865 F. Supp. at 137 ("lack of prejudice is not a barrier to the imposition of penalties"). Whether because the lack of demonstrated prejudice here is fatal to Strom's request or not, I conclude as a matter of discretion that the record before me does not warrant the imposition of the penalty she seeks.

In particular, Strom has done nothing to explain why I should impose the maximum penalty rather than some lesser sanction. Even in the case involving the most egregious circumstances of all those Strom cites in support of her claim, *see* Strom Memo. at 24, the court imposed a penalty of only $50 per day – less than half of what Strom seeks here – on a plan administrator who failed for two years to provide documents to a beneficiary. *Lowe v. McGraw-Hill Companies, Inc.*, 361 F.3d 335, 338 (7th Cir. 2004). The plaintiff in *Lowe* was the retired widower of a plan participant, and was forced to commence litigation because he did not get any response to his requests for information from the plan administrator. If Strom – a practicing lawyer who has not yet retired, and who, for at least half of the documents for which she seeks a penalty, complains of a much shorter delay – has somehow suffered more potential prejudice than the latter plaintiff, she has failed to explain how or why that is the case. *See* Strom Reply at 10. I therefore deny summary judgment to Strom on her request for civil penalties on Counts I through IV.

III.     Conclusion

For the reasons set forth above, I grant the defendants' motion for summary judgment with respect to Counts I and III and deny it with respect to Counts II, IV, and V (the latter only to the extent Strom relies on a theory of fraud).  I also deny Strom's motion for summary judgment with respect to Counts I through III ; with respect to Count IV, I grant partial summary judgment to the extent that I direct the Clerk to enter an order declaring that Strom is entitled to future benefits in the amount of $10,326.16 under the Fenchel Plan; and finally, with respect to Counts I through IV, I deny Strom's request for summary judgment with respect to the imposition of civil penalties.

**SO ORDERED.**

Dated:  Central Islip, New York
        September 30, 2005

                                        /s/ James Orenstein
                                        JAMES ORENSTEIN
                                        U.S. Magistrate Judge